**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KEVIN MENKE and ROBERT MENKE, | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 10-2585 |
| v. | : | **OPINION** |
| MICHAEL BAKER, MICHAEL STONNELL, THE CITY OF BRIGANTINE, BRIGANTINE POLICE DEPARTMENT, | : : | |
| Defendants. | | |

**RODRIGUEZ**, Senior District Judge

This matter is before the Court on Defendants' motions for summary judgment. [37, 40.] Plaintiffs Kevin and Robert Menke filed a complaint pursuant 42 U.S.C. § 1983 against Defendants Trooper Michael Baker and Trooper Michael Stonnell of the New Jersey State Police, the City of Brigantine, and the Brigantine Police Department alleging Fourth Amendment claims for unlawful arrest, unreasonable seizure, malicious prosecution and failure to train. Primarily at issue is whether probable cause existed for the arrests of Plaintiffs. Defendants Baker and Stonnell also argue that Plaintiffs' claims are barred by Heck v. Humphrey, and the Brigantine Defendants argue that there is no evidence of either a failure to train or a policy or custom that caused a violation of Plaintiffs' constitutional rights. The Court has considered the written submissions of the parties and oral argument was heard on Wednesday, May 23, 2012. For the reasons discussed below, Baker's and Stonnell's motion will be granted in part and denied in part and the Brigantine Defendants' motion will be granted.

## **Background**

On June 13, 2008, at approximately 10:30 p.m., the Menke brothers, Kevin and Robert, parked in the parking lot of a Wawa store in Brigantine, New Jersey. Both brothers took prescription medication and Kevin, who had been driving, entered the store to get something to eat in order to take his medicine. While Kevin was in the store, a white SUV pulled into a parking space two spaces over and to the right of the Menkes' car. The occupants were Troopers Michael Baker and Michael Stonnell ("Trooper Defendants") of the New Jersey State Police; the SUV was not marked and Plaintiffs allege that they were initially unaware that the two men were police officers. Baker, seated in the driver's seat, was wearing a Marine Services Unit, Class B uniform, which consisted of a blue polo shirt with the State Police insignia on the left breast and "STATE TROOPER" printed across the back, dark blue pants with yellow stripes on each outside leg, and a belt with a gun holster and equipment. Trooper Stonnell was in civilian clothes.

Plaintiffs allege that while sitting in the car's passenger seat waiting for Kevin, Robert heard someone yell "do you got a problem?" Dep. of Robert Menke ("Robert Dep.") 40:10-13. Robert claims the question was asked two more times while Kevin was still in the store. According to the Trooper Defendants, Trooper Baker asked this question one time, after Kevin returned to the car. Baker stated that Robert had been staring over at them for an "unusual" length of time and then said something to Kevin upon Kevin's return which cause Kevin to also stare over at the Troopers. Dep. of Michael Baker ("Baker Dep.") 47:1-4; 49:22-25 - 50:1-9. According to Plaintiffs, Robert did not stare at Baker and only glanced over for "[n]o more than two [or] three seconds."

2

Robert Dep. 38:24-25 - 39:1. The Troopers assert that Baker asked if Plaintiffs were having a problem because he believed they may have required assistance or needed something.

Plaintiffs allege that when Kevin exited the store, Robert told Kevin about Baker's asking if Robert had a problem. It was then, Plaintiffs allege, that Baker asked if they had a problem for the fourth time. Plaintiffs state that Robert remained in the vehicle and Kevin then exited the car, walked to the back of the driver's side and asked who the men were and if they were police officers. Robert Dep. 45:22-25 - 46:1-5. The Troopers claim that both Menkes simultaneously exited the vehicle and immediately approached their SUV while asking who Baker and Stonnell were. Baker Dep. 53:21-25 - 54:1. According to the Menkes, Baker made a comment about the Menkes' looking suspicious and asked if they were selling drugs; about this time, Robert also exited the car. Kevin asked if Baker was a cop and asked to see ID. According to Plaintiffs, Baker responded "here's my fuckin' ID" and indicated to the Menkes to approach the SUV, at which point the Menkes walked over "slowly." Dep. of Kevin Menke ("Kevin Dep.") 47:5-14. Baker and Stonnell deny that Baker made any indication for the Menkes to approach the vehicle; rather, they assert that the Menke brothers jumped out of their car and quickly charged towards their vehicle.

According to Plaintiffs, when they were within one to two feet of the SUV's driver's side door, they observed that Baker had withdrawn his gun and was holding it on his lap, pointing it out the driver's side window at them, and again said "here's my fucking ID." Id. at 47:17-19. The Troopers, though, assert that Kevin put his hands on the sill of the driver's side door of the SUV and "stuck his head" into the vehicle and was

3

screaming and cursing, leading to Baker's withdrawal of his weapon. Baker Dep. 56:10-21. The Menkes retreated from the vehicle and yelled that Baker had a gun. Baker then exited the vehicle, returned his gun to its holster, and approached Kevin. A bystander interceded and told Kevin that Baker and Stonnell were police; Baker told the man to leave and not to interfere with police business. According to Plaintiffs, Trooper Baker withdrew his gun again, used his forearm to put Kevin up against the wall of the Wawa and put the gun in Kevin's face. Baker denies withdrawing his weapon a second time after exiting the SUV.

Plaintiffs assert that as Baker was restraining Kevin, Robert called 9-1-1 and reported that someone claiming to be an officer had just pulled a gun on him in a Wawa parking lot. At this point, Trooper Stonnell exited the SUV and told Robert to "hang up the fucking phone" and that he was under arrest. Robert Dep. 93:9-12; Decl. of Michael Freeman ("Freeman Decl."), Ex. "F." . Robert did not hang the phone up and continued the call with the 9-1-1 dispatcher; Trooper Stonnell could be heard on the call telling Robert to hang up the phone. Freeman Decl., Ex. "F." Stonnell placed a handcuff on one of Robert's wrists and attempted to effectuate arrest but Robert remained on the phone.

Officers from the Brigantine Police Department responded to the scene following Robert's 9-1-1 call. After Brigantine police arrived, Kevin was originally told that he was free to go, but that Robert was under arrest for disorderly conduct. Troopers Baker and Stonnell made the decision with respect to arresting Robert. Baker Dep. 67:21-25 - 68:1-13. Kevin was not permitted to re-enter the Menkes' car. At some point, Baker asked Kevin if he had any drugs or weapons and Kevin responded that he had prescription drugs in his car. Kevin Dep. 49:8-12. Kevin told Trooper Baker that Baker could go into

4

the car and retrieve his medication, which Trooper Baker did. Id. at 49:12-24. Upon retrieving the bottle with the medication in it, Baker found that the bottle contained three different types of pills, though the label only listed one medication. A search of Robert during the arrest (by Brigantine police officer Gary Means) revealed a medication bottle which also listed one prescription but contained three different medications. Neither of the Menke brothers had a prescription with them for the medication. Ultimately, both were arrested and charged with disorderly conduct and charges for possession of a controlled dangerous substance (CDS). The Brigantine officers took Plaintiffs into custody because the Troopers' SUV was not equipped for transporting arrestees.

Plaintiffs were taken to the Brigantine Police Station, where they remained handcuffed to a wall for one hour and twenty-five minutes. According to Plaintiffs, upon their release, the Brigantine Police called the State Police and Trooper Baker then came to the station and took Plaintiffs into custody. The Menkes were transported to the State Police Barracks in Atlantic City, where Trooper Baker at some point called the Menkes' psychiatrist, who confirmed that the medications were prescribed. Sometime while at the Barracks, Kevin asked for his medication because he was feeling nauseated, but he claims his request was refused. Kevin began to have a panic attack while at the barracks. Paramedics were called and both Robert and Kevin were issued summonses, released, and taken to the hospital.

Kevin and Robert were charged with disorderly conduct in violation of N.J.S.A. 2C:33-2A(1) as well as charges for possession of a controlled dangerous substance. As part of a plea agreement, the charges against Kevin were downgraded and he pleaded

guilty to a municipal nuisance violation. The disorderly conduct charge against Robert

was dismissed for reasons contested by the parties. The prosecutor dropped the CDS

charges against both of the Menkes because it had been established that the medications

were lawfully prescribed.

The Menkes filed suit on May 19, 2010 pursuant to 42 U.S.C. § 1983 asserting

claims against the Trooper Defendants for violations of their Fourth Amendment rights

premised upon unlawful arrest/false imprisonment ("Count One"), unreasonable

seizure of property ("Count Two"), and malicious prosecution ("Count Four"). Plaintiffs

also allege claims against the City of Brigantine and the Brigantine Police Department

for unlawful arrest/false imprisonment ("Count Three") and failure to train ("Count

Five"). Plaintiffs have not stated a claim for excessive force. All defendants move for

summary judgment.

## Discussion

### I. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if,

viewing the facts in the light most favorable to the non-moving party, the moving party

is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d

471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986));

accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when

"the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could

6

return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine

7

whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## II. 42 U.S.C. § 1983

Plaintiff's Constitutional claims are governed by 42 U.S.C. § 1983.  A plaintiff may have a cause of action under 42 U.S.C. § 1983  for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, a plaintiff must demonstrate two essential elements to maintain a claim under section 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994); Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989).

A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory.  Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978).  However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind,  the alleged

8

violation of Plaintiff's rights.  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).  Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).  Further, a plaintiff must show that the municipality acted with "deliberate indifference" to the known policy or custom.  Canton v. Harris, 489 U.S. 378, 388 (1989).  "A showing of simple or even heightened negligence will not suffice."  Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. at 397, 407 (1997).

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.  Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

For a right to be clearly established, "[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (2006).  "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity.  Couden, 446 F.3d at 492 (internal citations omitted).  Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986).  See also, Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.).  Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant.  See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

### III. Analysis

Plaintiffs state claims under the Fourth Amendment pursuant to 42 U.S.C. § 1983. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

Specifically, Plaintiffs allege claims for unlawful arrest/imprisonment, malicious prosecution, and unlawful seizure of their medication. The Trooper Defendants move for summary judgment as to all claims. The Brigantine Defendants argue that there is no

10

evidence of a failure to train or of a policy or custom which caused a constitutional violation.

## A. Unlawful Arrest

To prove a claim for unlawful arrest, a Plaintiff must show that he or she was arrested without probable cause. Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997). Probable cause exists where "'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Schneider, 749 A.2d at 349-50 (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949)). When considering whether probable cause exists, the Court must look at the "totality of the circumstances." Id. at 350 (citing Illinois v. Gates, 462 U.S. 213, 230-31 (1983)). Probable cause is less than proof needed to convict, but more than mere suspicion. Id. A police officer can defend a § 1983 claim by establishing: (1) that he or she acted with probable cause; or, (2) if probable cause did not exist, that a reasonable police officer could have believed it existed. Kirk v. City of Newark, 536 A.2d 229, 234 (N.J. 1988) (citing Anderson, 483 U.S. at 663-64). "Probable cause exist[s] if 'at the moment the arrest was made . . . the facts and circumstances within [the defendants'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the plaintiff] had violated" the law. Hunter v. Bryant, 502 U.S. 224, 228 (1991) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

The Trooper Defendants forward three arguments in opposition to Plaintiffs unlawful arrest claims. First, the Troopers argue that Heck v. Humphrey bars Plaintiffs

claims. Second, the Troopers argue that there was probable cause to arrest Plaintiffs.

Third, the Troopers argue that they are entitled to qualified immunity. The Court will

address each argument in turn.

## 1. Heck v. Humphrey

The Trooper Defendants first argue that Heck v. Humphrey, 512 U.S. 477 (1994),

precludes Plaintiffs' § 1983 action.  If true, it is not proper for this court to grant

summary judgment because the complaint must be dismissed. See id. at 490 (affirming

appellate court's dismissal).[1]

In Heck, the Supreme Court stated:

> In order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness
> would render a conviction or sentence invalid, a § 1983 plaintiff must prove
> that the conviction or sentence has been reversed on direct appeal, or called
> into question by a federal court's issuance of a writ of habeas corpus, 28
> U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction
> or sentence that has not been so invalidated is not cognizable under § 1983.
> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court
> must consider whether a judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if it would, the complaint
> must be dismissed unless the plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.  But if the district court determines
> that the plaintiff's action, even if successful, will not demonstrate the
> invalidity of any outstanding criminal judgment against the plaintiff, the
> action should be allowed to proceed, in the absence of some other bar to suit.

---

[1] This court could not entertain this action if Heck so prohibits and, thus, could
not grant any judgment.  Additionally, this distinction is important because it affects the
burden of proof.  While defendant has the burden of demonstrating the lack of a genuine
issue of material fact in a summary judgment motion, see Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986), under Heck the "plaintiff must prove that the conviction or
sentence has been reversed . . . or called into question," 512 U.S. at 486-87.

    Furthermore, a dismissal under Heck is without prejudice.  A plaintiff whose §
1983 claim is dismissed under Heck may be able to re-file a suit if he can demonstrate in
the future that the conviction that might be called into question has itself been called
into question or invalidated.

Id. at 486-87 (footnotes omitted).

The Troopers argue that, under Heck, a finding in favor of Plaintiffs on their false arrest claims would imply the invalidity of the outcome of Plaintiffs' criminal charges, namely, Kevin's plea to the nuisance ordinance violation. The Court therefore "must consider" whether Plaintiff's action "will necessarily imply the invalidity" of that outcome. In doing so, the Court will consider each of the Menkes individually.

The Menkes were arrested and charged with violating the New Jersey disorderly conduct statute, N.J.S.A. 2C:33-2a(1), which provides:

> A person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he
>
> (1) Engages in fighting or threatening, or in violent or tumultuous behavior

N.J.S.A. 2C:33-2a. Kevin agreed to a plea agreement wherein the charges against him were downgraded and he pleaded guilty to a violation of a general nuisance ordinance, Brigantine City Ordinance 220-10, which is "not a disorderly persons ordinance, but rather  a nuisance ordinance for loud noise and uncooperative behavior." Freeman Decl., Ex. "I" 5:18-24.

In pleading to the nuisance violation, Kevin admitted to being loud, cursing, and "along with the officers there, creating a disturbance" in the Wawa parking lot, as heard in the background of Robert's 9-1-1 call. Id. at 7:11-17. Kevin further admitted that he was being "loud and boisterous and acting in an unreasonable manner." Id. at 8:6-10. The court accepted the guilty plea and entered a finding of guilty. The Troopers argue that because Kevin pled guilty to the nuisance violation and admitted to misconduct he

13

cannot state a claim alleging there was no probable cause to arrest him, and that a finding in his favor would necessarily imply the invalidity of his conviction. The Court agrees. Though Kevin pleaded guilty only to a violation of a municipal ordinance, an officer may make an arrest where he has probable cause to believe an individual has committed even a very minor offense in his presence. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). Thus, because Kevin admitted to misconduct in violation of the ordinance, a finding that there was no probable cause would imply the invalidity of Kevin's admission of guilt and his conviction. Accordingly, Kevin's unlawful arrest claim will be dismissed in accordance with Heck v. Humphrey.[2]

Robert's claim is another matter. The charges against Robert were apparently dismissed, but the parties dispute why this was so. The Troopers point to the transcript of the municipal court proceeding in which Kevin's plea was entered and claim that Robert's charges were dropped as part of Kevin's plea agreement; however, nothing in the transcript as submitted indicates the outcome of the charges against Robert, let alone the reason for that outcome. In addition, when the municipal prosecutor proffered the plea agreement on the record, he spoke only of Kevin and made no mention of

---

[2] Plaintiffs argue that Kevin admitted to misconduct that took place after he had been placed under arrest. At the criminal hearing, Kevin indicated that the conduct to which he admitted took place while Robert was on the phone and while Baker had Kevin against the wall with his gun pointed at Kevin. Freeman Decl., Ex. "I" 6:7-18. Plaintiffs argue that because Kevin only admitted to misconduct during this time, after Kevin's arrest, Kevin's admission therefore does not bar his claim, which is for conduct before his arrest. This argument is without merit and contradicts Plaintiffs version of the facts which indicates that Kevin had not yet been arrested at that time and had originally been told by the Brigantine police that he was free to go. Kevin Dep. 49:1-7[cites] In any case, Plaintiffs offer no authority that such parsing of factual admissions in connection with a guilty plea abrogates Heck's requirement that a plaintiff in a 1983 action demonstrate that his conviction has been invalidated.

Robert. Freeman Decl., Ex. "I" 5:17-24. The record does not support the Trooper Defendants' assertion that the charges against Robert were dropped as part of Kevin's plea agreement.

The Troopers present this assertion and argue that <u>Heck</u> also bars Robert's claim because he did not obtain a "favorable termination." Defendants cite to authority stating that when claims are dismissed as part of a global compromise, a plaintiff has not obtained a favorable termination of the criminal charges. Defendants' arguments in this regard cite cases addressing malicious prosecution (not unlawful arrest), which has as a required element that the plaintiff in such an action have obtained a favorable result in the criminal action. Those cases state that charges dropped as part of a compromise agreement do not amount to a favorable result to support a claim of malicious prosecution. They do not address a situation such as the one here, where a plaintiff stating a claim for false arrest is not prosecuted or convicted for any charge. <u>Heck</u> is concerned with judgments in civil proceedings that would necessarily imply the invalidity of a criminal conviction; here, Robert was never convicted and nothing in the record indicates that he pleaded guilty to any offense. Thus, it does not appear that <u>Heck</u> presents a bar to Robert's unlawful arrest claim. Accordingly, Robert's claim will not be dismissed pursuant to <u>Heck v. Humphrey</u>.

## **2. Probable Cause and Qualified Immunity**

Baker and Stonnell next argue that even if Plaintiffs' claims are not barred by <u>Heck</u>, probable cause existed for Plaintiffs' arrests and that the Troopers are entitled to qualified immunity. As discussed, Kevin's unlawful arrest claim will be dismissed and only Robert's remains. Generally, the issue of probable cause is a question for the jury.

15

Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir.1998). Though qualified immunity is a question of law, "when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006). Here, viewing the facts most favorably to Robert, the evidence may reasonably support a determination that probable cause did not exist to arrest him. There are facts in dispute and issues of credibility that impact the determination of probable cause which must be resolved by a jury. Accordingly, the Court can neither determine whether probable cause existed nor grant Defendants qualified immunity on the unlawful arrest claim at this time.

**B. Malicious Prosecution**

To establish malicious prosecution under § 1983, a Plaintiff must establish that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007).

Kevin cannot establish the elements of malicious prosecution because he pled guilty to violating the nuisance ordinance and thus the criminal prosecution did not result in his favor. "[A] malicious prosecution claim cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused." Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009). In addition, as discussed above, Kevin cannot maintain an argument that the proceedings

16

against him were initiated without probable cause.[3]

Neither Robert nor Kevin present evidence supporting the fifth element, which requires a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Plaintiffs arrest and detention at the police station are insufficient to satisfy this requirement because they occurred prior to any legal proceeding. See Laufgas v. Patterson, 206 Fed. Appx. 196, 198 (3d Cir. 2006) (deprivation requirement not met where arrest and detention "were not made pursuant to a warrant and occurred prior to the filing of any criminal complaint"). Plaintiffs therefore cannot maintain claims for malicious prosecution. Without the need to address the remaining elements, the Court will grant the Trooper Defendants' motion with respect to Plaintiffs' malicious prosecution claim.

## C. Unlawful Seizure

The Fourth Amendment ensures "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Consent to a search is a well-recognized exception to the general requirements of both a warrant and probable cause. U.S. v. Stabile, 633 F.3d 219, 230 (3d Cir. 2011) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). It is also reasonable for arresting officers to conduct a search of an arrestee's person. U.S. v.

---

[3] Plaintiffs argue that Kevin obtained a favorable result because the CDS charge was voluntarily dismissed by the state. This argument is unavailing. At trial, Kevin's attorney stipulated that Plaintiffs prescription medications were not in valid prescription bottles and that "the officer certainly had a right to bring the charge initially." Freeman Decl., Ex. "I" 5:1-4. Plaintiffs cannot now argue that the CDS charge was brought maliciously. In any event, as discussed, Plaintiffs fail to meet several elements required to state a malicious prosecution claim.

Shakir, 616 F.3d 315, 317 (3d Cir. 2010); Chimel v. California, 395 U.S. 752, 762-63 (1969). In addition, where a search or entry is lawful, the seizure of objects which an officer has probable cause to believe are evidence of a crime is also lawful under the Fourth Amendment. Maryland v. Buie, 494 U.S. 325, 330 (1990).

With respect to Kevin's claim, Defendants argue that it is undisputed that Kevin consented to Baker's search of his car and retrieval of his medication. Because Kevin consented, Defendants argue, he cannot maintain a claim that the seizure violated the Fourth Amendment. The Court agrees. When Baker asked Kevin if he had drugs or weapons, Kevin informed Baker that he had prescription drugs in the car and that Baker could search for and retrieve them. Kevin Dep. 79:19-23; 81:20-22. The bottle containing the medication was labeled as Lorazepam but instead contained three different medications. Id. at 82:3-25 - 83:1-4. In addition, as noted above, Kevin stipulated at the criminal hearing that the medication was improperly contained and that the initial inception of the CDS charge was proper. The search for and removal of Kevin's medication, to which Kevin consented, did not violate the Fourth Amendment and the seizure of the medicine was lawful.

As to Robert's seizure claim, Defendant Troopers assert that neither Trooper Baker nor Trooper Stonnell conducted the search of Robert that led to the seizure of his medication. Rather, the search was conducted by Officer Means of the Brigantine Police Department and it was Means who removed the medication from Robert's pocket and took it into custody. Robert Dep. 116:19-22.[4] Plaintiffs do not address these facts and

---

[4] Officer Means also took Robert into custody and transported him to the Brigantine police station.

18

argue only that if Plaintiffs were arrested without probable cause then the seizure resulting from their arrest was equally unconstitutional. As to the Trooper Defendants, however, the legality of the search and seizure of Robert's medication is not material if neither Baker nor Stonnell participated in the alleged violation. See C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 201-02 (3d Cir. 2000) (defendant in a § 1983 action cannot be held liable for a constitutional violation which he or she neither participated in nor approved). Though it is their burden to do so, Plaintiffs have not identified specific facts or affirmative evidence that contradict those offered by Defendants as to Baker's or Stonnell's participation in or approval of the seizure.  Andersen, 477 U.S. at 256-57. Accordingly, summary judgment will be granted in favor of the Trooper Defendants on Plaintiffs' unlawful seizure claim.

## D. The Monell Claim

Plaintiffs do not state any claims against any individual Brigantine Police officers. Instead, Plaintiffs state claims only against the City of Brigantine and the Brigantine Police Department for unlawful arrest and failure to train.[5] Specifically, at oral argument, Plaintiffs clarified their claim as asserting that where the Brigantine officers arrived on the scene as a result of Robert's 9-1-1 call and observed two individuals under arrest by State Troopers who then made charges against them, the Brigantine officers had a duty to investigate before the charges were brought and failed to do so. Plaintiffs,

---

[5] The Court notes that police departments cannot be sued in conjunction with municipalities because the police department is merely an administrative arm of the local municipality. Padilla v. Township of Cherry Hill, 110 Fed. Appx. 272, 278 (3d Cir. 2004).

however, have offered no support for the idea that the responding Brigantine officers had a constitutional duty to investigate the propriety of arrests made by officers of another jurisdiction prior to the Brigantine officers' arrival on the scene. Plaintiffs claim more appropriately alleges negligence, which is not actionable under § 1983. Even if Trooper Baker or Stonnell violated Plaintiffs' constitutional rights, there is insufficient evidence to establish Brigantine's liability for such violations.[6] Accordingly, the Brigantine Defendants' motion for summary judgment will be granted.

## <u>Conclusion</u>

For the reasons discussed above, the motion for summary judgment filed by Defendants Baker and Stonnell will be GRANTED IN PART and DENIED IN PART. The motion for summary judgment filed by Defendants City of Brigantine and Brigantine Police Department will be GRANTED. The appropriate orders shall issue.

Dated: June 19, 2012

　　　/s/Joseph H. Rodriguez　　　　
Hon. Joseph H. Rodriguez,
United States District Judge

---

[6] A number of the Court's findings with respect to the Trooper Defendants' motion would render Plaintiffs' arguments moot even if the constitutional duty to investigate were found to exist. If Kevin's arrest and the seizure of his medication were not unlawful, and if neither Kevin nor Robert satisfies the elements for malicious prosecution, the Brigantine Defendants could not be liable for contributing to those alleged violations in any event because they did not occur.